

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00364-CR

———————————————

DAVID RAY BAKER, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CR20549

---

Before Gabriel, Birdwell, and Wallach, JJ.
Memorandum Opinion by Justice Gabriel

## MEMORANDUM OPINION

Appellant David Ray Baker was convicted by a jury of evading arrest or detention using a vehicle, a third-degree felony. *See* Tex. Penal Code Ann. § 38.04(b)(2)(A). The jury found each of the enhancement paragraphs contained in the indictment to be true and assessed his punishment at fifty years' confinement. The trial court sentenced him accordingly. Baker raises six issues on appeal. In his first issue, Baker argues that the evidence to convict him was insufficient because the subject stop was unlawful. In his second and third issues, Baker argues that the trial court erred by refusing to suppress certain evidence obtained as a result of the stop. In his fourth through sixth issues, Baker argues that the trial court abused its discretion by admitting certain evidence in the guilt-innocence and punishment phases of his trial and that the cumulative effect of the admission of this evidence led to an unfair trial.

Because we hold that the evidence was sufficient to prove that the subject stop was lawful, we overrule Baker's first issue. Because we hold that Baker failed to preserve his complaint regarding the trial court's purported refusal to suppress evidence, we overrule Baker's second and third issues. Because we hold that the trial court did not abuse its discretion by admitting the complained-of evidence in the punishment phase of Baker's trial, and because we hold that, even assuming error, Baker was not harmed by the admission of the complained-of evidence in the guilt-

innocence phase of his trial, we overrule Baker's fourth through sixth issues. Accordingly, we affirm the trial court's judgment.

## I.  BACKGROUND

On December 18, 2017, Sergeant James Mayo, an investigator with the Wise County Sheriff's Office, received information that Baker was driving a Dodge pickup truck through Wise County carrying narcotics.  Mayo relayed the information to multiple officers and told them to be on the lookout for the truck.  The officers' plans were to follow Baker until an officer saw a traffic violation that would justify a stop.

Deputy Robert Sparks, one of the officers Mayo notified, observed Baker driving the described truck and began following him.  Sparks observed Baker turn off the Highway 287 service road onto Highway 51 while failing to signal at least 100 feet before turning.  *See* Tex. Transp. Code Ann. § 545.104(b).  Sparks later observed Baker turn into a restaurant's parking lot while failing to signal at least 100 feet before turning.[1]  *See id.*  At that point, Sparks activated his patrol car's emergency overhead lights and initiated a traffic stop.

Baker's truck slowed down following the activation of the patrol car's emergency overhead lights, and the truck seemed to stop "[f]or a brief second."  The truck then took off at a high rate of speed, narrowly avoiding collisions with multiple vehicles in the parking lot.  Sparks followed in his patrol car and, according to his later

---

[1]Sparks also testified that the rear-mounted center lamp in Baker's truck was not functioning.

testimony at trial, his patrol car reached approximately fifty miles per hour while he pursued Baker in the parking lot. When Baker reached the edge of the parking lot, he drove his truck through a fence at a high rate of speed, disabling the truck. Baker exited the truck and started running across a field. Sparks pursued Baker on foot and yelled for him to stop, but Baker continued to flee. As he was running, Baker briefly fell in an area of pooled water. Shortly thereafter, Sparks and other police officers apprehended Baker.

After apprehending Baker, Sparks, who was part of a K-9 unit, retrieved his dog to conduct a drug sniff of Baker's truck. The dog alerted to narcotics, so officers searched the truck, but they did not find any narcotics. The officers then searched the path they took in pursuit of Baker, and in the pooled water where Baker fell, officers found methamphetamine inside a sandwich bag. Although methamphetamine dissolves rapidly in water, the sandwich bag contained methamphetamine that had not yet dissolved. Baker later told police that the bag had originally contained approximately a quarter pound of methamphetamine.

A grand jury indicted Baker for evading arrest or detention with a vehicle and tampering with evidence (relating to Baker's attempts to conceal his possession of methamphetamine). The State moved forward only on the evading-arrest charge. After the jury found Baker guilty of evading arrest or detention with a vehicle and assessed his punishment at fifty years' confinement, he filed this appeal.

## II.  SUFFICIENCY OF THE EVIDENCE

In his first issue, Baker argues that the evidence to convict him for evading arrest was insufficient because the subject stop was unlawful.  Baker contends that the stop was unlawful because Sparks did not have probable cause sufficient to detain him.

### A.  STANDARD OF REVIEW

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational fact-finder could have found the crime's essential elements beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

### B.  THE LAW

Baker was convicted of evading arrest or detention with a vehicle.  *See* Tex. Penal Code Ann. § 38.04(b)(2)(A).  One of the elements of that offense—and the only element contested by Baker on appeal—is that the attempted detention be lawful.  *See id.* § 38.04(a) ("A person commits an offense if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him."); *see also Rodriguez v. State*, 578 S.W.2d 419, 419 (Tex. Crim. App. 1979) (listing the elements of evading arrest including that "the attempted arrest is lawful").

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific,

articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An officer conducts a lawful temporary detention when he reasonably suspects that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. This is an objective standard that disregards the detaining officer's subjective intent and looks solely to whether the officer has an objective basis for the stop. *Id.*

Law enforcement personnel have probable cause to initiate a traffic stop when they see a person commit a traffic violation. *State v. Gray*, 158 S.W.3d 465, 469–70 (Tex. Crim. App. 2005); *see State v. Ballman*, 157 S.W.3d 65, 70 (Tex. App.—Fort Worth 2004, pet. ref'd). Because reasonable suspicion is a lesser standard than probable cause, an officer who has probable cause to detain a suspect necessarily has reasonable suspicion to do so. *Rodriguez v. State*, No. 02-18-00159-CR, 2018 WL 3153479, at *3 (Tex. App.—Fort Worth June 28, 2018, no pet.) (mem. op., not designated for publication); *Rubeck v. State*, 61 S.W.3d 741, 745 (Tex. App.—Fort Worth 2001, no pet.) (op. on reh'g).

## C. ANALYSIS

At trial, Sparks stated that the reason he decided to stop Baker's truck was because Baker had failed to signal at least 100 feet before turning into the restaurant's parking lot.[2] Failure to continuously signal a turn at least 100 feet in advance of the turn is a criminal offense in Texas. *See* Tex. Transp. Code Ann. § 545.104(b). Baker argues that the stop was unlawful because Sparks "did not provide any facts to support his belief that a violation of law had occurred," but only provided conclusory statements. We disagree. Sparks testified that he personally observed Baker turn into the parking lot and that he personally observed Baker signaling just before the turn. Sparks estimated that Baker did not begin signaling until 25 feet before turning, and that estimate was "being generous." Video from the dash camera of Sparks's patrol car showing Baker turn into the parking lot and his signaling prior to the turn was also admitted, from which the jury could test the reasonableness of Sparks's opinion that Baker had committed a traffic violation. The question is not whether Baker in fact actually failed to continuously signal for 100 feet before turning; rather, it is whether Sparks could have reasonably concluded based on specific, rational inferences from the facts that Baker failed to continuously signal for 100 feet before turning. *See Ford*,

---

[2]While Sparks stated that he pulled Baker's truck over because of that violation, he identified three purported violations: (1) failure to signal at least 100 feet before turning off the Highway 287 service road onto Highway 51; (2) failure to signal at least 100 feet before turning into the restaurant's parking lot; and (3) operating the truck with a non-functioning rear-mounted center lamp.

158 S.W.3d at 492; *State v. Hneidy*, 510 S.W.3d 458, 463 (Tex. App.—San Antonio 2013, pet. ref'd).

Viewing the evidence in the light most favorable to the verdict, we hold that Sparks could have reasonably concluded that Baker failed to continuously signal for 100 feet before the turn into the restaurant's parking lot, and we therefore hold that the evidence was sufficient to prove that the subject stop was lawful. *See Ford*, 158 S.W.3d at 492; *Gray*, 158 S.W.3d at 469–70. We thus overrule Baker's first issue.

## III. BAKER'S COMPLAINTS REGARDING THE TRIAL COURT'S PURPORTED REFUSAL TO SUPPRESS EVIDENCE

In his second and third issues, Baker argues that the trial court erred by failing to suppress evidence resulting from his arrest.

### A. THE LAW REGARDING PRESERVATION

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion stating the specific grounds, if not apparent from the context, for the desired ruling. Tex. R. App. P. 33.1(a)(1); *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016). Further, the party must have obtained an express or implicit adverse trial-court ruling or objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013). Because it is a systemic requirement, this court should independently review error preservation, and we have a duty to ensure that a claim is

8

properly preserved in the trial court before we address its merits. *Darcy v. State*, 488 S.W.3d 325, 327–28 (Tex. Crim. App. 2016).

## B. ANALYSIS

Here, Baker filed a motion to suppress all evidence, materials, and statements as a result of his arrest. At the beginning of trial, the following exchange occurred regarding that motion:

> [Baker's Counsel]: . . . I'll hand one to the Court, just in case it's not in your queue – Defense motion to suppress the evidence. We think we're entitled to suppress the methamphetamine and the tamper charge, which we don't believe the officer was trying to lawfully stop the Defendant. I'm not taking the position I'm entitled to the motion to suppress on the traffic stop, but I think we're entitled to suppress the evidence they found as a result of the stop, other than the evading.
>
> [Trial Court]: All right.
>
> [Baker's Counsel]: And we're going to be asking the Court to rule on that at some point during the trial.
>
> [Trial Court]: All right. And when you're – when you're ready for me to make that ruling, I'll do it.
>
> [Baker's Counsel]: Well, the problem is, is if the State is allowed to get into it right off the bat, it's gonna be hard to get the skunk out of the box.
>
> [Trial Court]: Well, response to that, [State's Counsel]?
>
> [State's Counsel]: [Gives an explanation for why he believes the subject stop was lawful.]
>
> [Trial Court]: Okay. I understand.
>
> [State's Counsel]: Yeah.

9

[Trial Court]: All right.  Anything else?

[Baker's Counsel]: Nothing from the Defense, your Honor.

While Baker's counsel stated that he would ask the trial court to rule on the motion to suppress "at some point during the trial," and while the trial court expressed a willingness to rule on the motion whenever Baker's counsel requested a ruling, Baker's counsel never requested a ruling on the motion.  Based on this record, Baker has failed to preserve his complaints regarding the trial court's purported refusal to suppress evidence because Baker never requested a ruling from the trial court regarding his motion to suppress.[3]  *See* Tex. R. App. P. 33.1(a)(1), (2); *Thomas*, 505 S.W.3d at 924; *Everitt*, 407 S.W.3d at 262–63.  Accordingly, we overrule Baker's second and third issues.

## IV.  BAKER'S EVIDENTIARY COMPLAINTS

Baker raises certain evidentiary complaints in his fourth through sixth issues. In his fourth issue, Baker argues that the trial court abused its discretion by admitting evidence of his possession of methamphetamine and tampering of evidence during the guilt-innocence phase of his trial.  In his fifth issue, Baker argues that the trial court abused its discretion by admitting evidence of his prior convictions during the punishment phase of his trial after he had already pleaded true to the offenses.  And

---

[3]While Baker did not preserve his complaints regarding his motion to suppress, Baker's counsel did raise numerous objections at trial to the admission of evidence obtained as a result of the subject stop, and Baker's fourth issue on appeal addresses many of these objections.

10

in his sixth issue, Baker argues that the cumulative effect of the improper admission of this evidence denied him a fair trial.

## A. STANDARD OF REVIEW

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). "As long as the trial court's ruling was within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *Prible*, 175 S.W.3d at 731 (quoting *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997)); *Montgomery v. State*, 810 S.W.3d 372, 380 (Tex. Crim. App. 1990) (op. on reh'g). "If the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed" regardless of the reason for the trial court's ruling. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

## B. BAKER'S COMPLAINT REGARDING EVIDENCE ADMITTED DURING THE GUILT-INNOCENCE PHASE

In his fourth issue, Baker argues that the trial court abused its discretion by admitting evidence of his possession of methamphetamine and tampering of evidence during the guilt-innocence phase of his trial. Specifically, Baker complains about the following evidence on appeal: (1) a video from Sparks's body camera depicting Sparks finding the sandwich bag containing methamphetamine in the area of pooled water; (2) a video from Sparks's body camera depicting his dog performing the drug sniff on

Baker's truck; (3) two photographs of the inside of Baker's truck showing a "BB gun [that] had the same visual characteristics as a real firearm" stored in the truck; (4) a chain of custody form pertaining to the seized methamphetamine; (5) testimony relating to the amount of the seized methamphetamine; (6) five photographs of the seized methamphetamine; (7) testimony relating to testing done to confirm that the seized material was methamphetamine; and (8) a laboratory report confirming that the seized material was methamphetamine.

Assuming, without deciding, that the trial court abused its discretion by admitting this evidence, we may not reverse the trial court's judgment unless the error affected Baker's substantial rights. *See* Tex. R. App. P. 44.2(b). The erroneous admission of evidence is non-constitutional error. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018); *Kennedy v. State*, 193 S.W.3d 645, 660 (Tex. App.—Fort Worth 2006, pet. ref'd). Non-constitutional error requires reversal only if it affects an appellant's substantial rights. *Gonzalez*, 544 S.W.3d at 373 (citing Tex. R. App. P. 44.2(b)); *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (citing same). Substantial rights are not affected if the reviewing court has fair assurances that the erroneous admission of evidence had no influence or only a slight influence on the jury. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); *Motilla*, 78 S.W.3d at 355. "Put another way, to be reversible, the jury must have been 'substantially swayed' by the improperly-admitted evidence." *Gillon v. State*, No. 02-16-00148-CR, 2017 WL 1738039, at *3 (Tex. App.—Fort Worth May 4, 2017, pet. ref'd) (mem. op.,

12

not designated for publication) (quoting *Hinds v. State*, 970 S.W.2d 33, 35 (Tex. App.—Dallas 1998, no pet.)). In making this determination, we review the entire record, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *Motilla*, 78 S.W.3d at 355. We may also consider the jury instructions, the State's theory and defensive theories, whether the State emphasized the error, closing arguments, and voir dire. *Id.* at 355–56.

Based on our review of the record, there is overwhelming evidence supporting the jury's verdict. *See id.* at 357; *Gillon*, 2017 WL 1738039, at *4. As detailed above, Sparks initiated a lawful traffic stop after personally observing Baker's truck make a turn without first continuously signaling for 100 feet. Sparks was in a marked patrol car wearing his police uniform at the time of the stop, and he activated his patrol car's emergency overhead lights to initiate the stop. Rather than stopping, Baker took off in his truck at a speed approximating fifty miles per hour, narrowly avoiding collisions with multiple vehicles in the parking lot. Despite these near misses, Baker did not stop, but he continued driving to the edge of the parking lot, where he drove his truck through a fence at a high rate of speed, disabling the truck. Baker then fled on foot and ignored Sparks's pleas to stop.

While a significant amount of evidence was admitted during the guilt-innocence phase relating to Baker's possession of methamphetamine and tampering of evidence, this evidence could be considered in connection with other evidence of his evading

13

arrest, namely, because it suggested a motive for his decision to flee and suggested his intent to evade detention. *See* Tex. R. Evid. 404(b) (allowing the admission of extraneous evidence to show, among other things, motive and intent). The trial court gave several limiting instructions—both oral and in writing—that minimized the risk that the jury would consider this evidence for an improper purpose or give it undue weight.[4] *See Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996) (noting that limiting instructions can minimize impermissible inferences of character conformity); *Harris v. State*, 572 S.W.3d 325, 334 (Tex. App.—Austin 2019, no pet.) ("The district court's limiting instruction in the charge about Zavala's testimony minimized any risk that the jury would consider the substance of her questioning for any improper purpose or give it undue weight."); *see also Adams v. State*, 179 S.W.3d 161, 165 (Tex.

---

[4]In the jury charge, the trial court gave the following instruction:

> The Defendant is on trial solely on the charges contained in the indictment. The State has introduced in evidence an act or acts other than those charged in the indictment. With reference to those other acts, you are instructed that said evidence was admitted only for the purpose of assisting you, if it does, for the purpose of showing the defendant's motive, intent, knowledge, absence of mistake or lack of accident, if any were committed. If you so find beyond a reasonable doubt, you can consider the evidence only for the purpose allowed. The evidence may not be considered to prove the character of the Defendant in order to show that he acted in conformity therewith on the occasion in question.

Similar oral limiting instructions were given when the trial court admitted the video of Sparks finding the methamphetamine and the video of his dog conducting the drug sniff and when the trial court admitted two photographs depicting a BB gun stored in Baker's truck.

App.—Amarillo 2005, no pet.) ("[W]e generally presume that the jury follows the trial court's instructions, including a limiting instruction regarding certain testimony."). And while several questions were posed to venire members regarding their views on methamphetamine use and its impact on the community during voir dire, the State did not mention methamphetamine during its initial closing argument, and it only mentioned drugs once during its rebuttal closing argument, after Baker's counsel reminded the jury during closing argument that Baker was "not on trial for having a whole lot of meth [but was] on trial for the felony offense of evading arrest with a motor vehicle."

On this record, we cannot say that the jury must have been "substantially swayed" by the evidence concerning Baker's methamphetamine possession and evidence tampering. Assuming the jury considered this evidence at all, we are persuaded that its admission had, at most, only a slight influence—not enough to constitute reversible error. *See Motilla*, 78 S.W.3d at 355. We thus hold that Baker's substantial rights were not violated and hold that any error was harmless. *See* Tex. R. App. P. 44.2(b); *Motilla*, 78 S.W.3d at 355. Accordingly, we overrule Baker's fourth issue.

### C. BAKER'S COMPLAINT REGARDING EVIDENCE ADMITTED DURING THE PUNISHMENT PHASE

In his fifth issue, Baker argues that the trial court abused its discretion in the punishment phase by admitting evidence of his prior convictions after he pleaded true

to those convictions.[5]  Pointing to *Harvey v. State*, Baker argues that the admission of this evidence was improper because "[p]leading true to an enhancement allegation removes the burden of proof from the state to prove that [a] prior conviction was a final conviction under law."  611 S.W.2d 108, 111 (Tex. Crim. App. 1981).  Baker's reliance on *Harvey* is misplaced.  While *Harvey* held that a defendant's plea of true obviated the State's burden to offer evidence to prove a prior conviction, *Harvey* did nothing to prohibit the State from offering evidence of a prior conviction following a defendant's plea of true.  *See id.*  Moreover, Article 37.07, Section 3(a)(1) of the Code of Criminal Procedure specifically allows the State to offer evidence of a defendant's prior convictions during the punishment phase even after a defendant has pleaded true to the prior convictions.  Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1).  That section provides, in pertinent part:

> *Regardless of the plea* and whether the punishment be assessed by the judge or the jury, *evidence may be offered by the state* and the defendant as to any matter the court deems relevant to sentencing, *including but not limited to the prior criminal record of the defendant*, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence*, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible*, regardless of whether he has previously been charged with or finally convicted of the crime or act.

---

[5]The complained-of evidence that was objected to at trial consists of certified copies of his prior convictions and a penitentiary packet.

16

*Id.* (emphasis added).

We overrule Baker's fifth issue.

### D.  BAKER'S COMPLAINT REGARDING THE CUMULATIVE EFFECT OF IMPROPERLY ADMITTED EVIDENCE

In his sixth issue, Baker argues that the cumulative effect of the improperly admitted evidence during the guilt-innocence and punishment phases of his trial denied him a fair trial.  The doctrine of cumulative error provides that the cumulative effect of multiple errors can, in the aggregate, constitute reversible error, even though no single instance of error would.  *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999); *Priddy v. State*, No. 02-13-00586-CR, 2014 WL 5307180, at *1 (Tex. App.—Fort Worth Oct. 16, 2014, no pet.) (mem. op., not designated for publication).  However, for the doctrine to apply, the alleged errors complained of must actually constitute error.  *Gamboa v. State*, 296 S.W.3d 574, 585 (Tex. Crim. App. 2009); *Priddy*, 2014 WL 5307180, at *1.  "The doctrine of cumulative error . . . rarely results in reversal, and is predicated upon meeting the standard of reversible error."  *Vasquez v. State*, No. 2-04-214-CR, 2006 WL 133462, at *5 (Tex. App.—Fort Worth Jan. 19, 2006, no pet.) (mem. op., not designated for publication).

Here, as we have already explained, the trial court did not err by admitting the complained-of evidence during the punishment phase of Baker's trial.  And we have already determined that Baker was not harmed by the admission of the complained-of evidence during the guilt-innocence phase of his trial.  Baker's cumulative-error

17

complaint thus lacks merit because there is no error to cumulate. *See Bell v. State*, No. 02-18-00244-CR, 2019 WL 1967538, at *9 (Tex. App.—Fort Worth May 2, 2019, pet. ref'd) (mem. op., not designated for publication) ("Bell argues that even if each of his previous points do not constitute harm sufficient for reversal, their cumulative effect does, undermining the fundamental fairness of the proceedings. But his individual points either do not demonstrate reversible error or do not show that he was harmed. Therefore, there is no error to cumulate."); *Baker v. State*, No. 03-18-00240-CR, 2019 WL 1646260, at *7 (Tex. App.—Austin Apr. 17, 2019, no pet.) (mem. op., not designated for publication) ("Here, Baker's cumulative-error contention lacks merit because we have concluded, as to his preserved appellate issues, that one complained-of error was harmless and that there was no error as to the remaining complaints.").

We overrule Baker's sixth issue.

## V. CONCLUSION

Having overruled Baker's six issues, we affirm the trial court's judgment.

/s/ Lee Gabriel

Lee Gabriel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: April 23, 2020